IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Waycross Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By cking at 3:14 pm, May 02, 2016

| | |
|---|---|
| IN RE: ) | CHAPTER 11 CASE |
| ) | NUMBER <u>16-50083</u> |
| RONNIE EMEL MUSIC, SR. ) | |
| ) | |
| Debtor in Possession ) | |
| _____ ) | |
| C. JAMES MCCALLAR, JR. and ) | |
| TIFFANY E. CARON ) | |
| ) | |
| Movants ) | |
| ) | |
| v. ) | |
| ) | |
| GUY B. GEBHARDT, ACTING ) | |
| UNITED STATES TRUSTEE, ) | |
| REGION 21 ) | |
| ) | |
| Respondent ) | |

**OPINION AND ORDER DENYING THE UNITED STATES TRUSTEE'S OBJECTION
TO THE AMENDED APPLICATION TO EMPLOY COUNSEL**

This matter came on for hearing on the amended application to employ ("Amended Application") C. James McCallar, Jr. and Tiffany E. Caron of the McCallar Law Firm ("Applicants") with objection by the United States Trustee ("UST"). At the conclusion of the hearing, I took this matter under advisement.

For the reasons that follow, the UST's objection is overruled. The Applicants may proceed with their employment by the Debtor in Possession ("DIP"), conditioned, however, on the requirement that the DIP obtain additional counsel pursuant to

AO 72A
(Rev. 8/82)

11 U.S.C. § 327(a)[1] to investigate and litigate, if necessary, any potential preference actions against Ronnie E. Music, Jr. ("Music") and Ronnie Music, Inc. ("RMI").

## FINDINGS OF FACT

On February 10, 2016, the Applicants submitted their initial application to employ. (ECF No. 9.) According to the application's affidavits, the Applicants disclosed they had received a retainer payment paid by the DIP in the amount of $61,000 prior to filing of the DIP's bankruptcy petition. (Id. at 9, 16-17.) On February 11, the UST sent the Applicants an email requesting further information as to the composition of the retainer payment. (UST's Brief, ECF No. 45 at 1.) On February 12, the Applicants responded by sending copies of the checks that made up the retainer payment and filing their Amended Application. (Id.)

The Amended Application revised the initial disclosure of the retainer payment to include the origins of the payment and the dates of receipt:

---

[1]Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

2

> Prior to the filing of this case, [the Applicants] received a $1,000.00 payment on March 24, 2015, for time and charges relating to representation of the [DIP] in a lawsuit filed in Ware County by Lewis & Raulerson, Inc. . . . . This payment covered time for an initial consultation and the preparation of and filing of an Answer in the Lewis & Raulerson case. This payment was made by a check drawn on [RMI] as a draw to the [DIP]. Prior to the filing of this case [the Applicants] received a $60,000.00 check on May 11, 2015, in the form of a retainer to cover fees and expenses in the pending Lewis & Raulerson Superior Court litigation and for fees related to a potential Chapter 11 bankruptcy filing. This payment was made by a check drawn on the account of [Music], [DIP's] son, representing a loan to the [DIP] for the purpose of resolving his legal and financial issues. Prior to the filing of this case, [the Applicants] drew a total of $24,742.35 (including the Chapter 11 filing fee of $1,717.00) from the payments set forth above over a period of time beginning March, 2015 and continuing up to the filing of a Chapter 11 bankruptcy petition on February 8, 2016. Out of this retainer, $36,257.65 remains on hand and is being held in [the Applicants'] IOLTA account to apply to future invoices, as and when approved by the Court. [The Applicants] **has not** taken any security for payment of attorney fees or expenses other than the cash payment itself.

(ECF No. 14 at 9, 18)(emphasis in original). The orders granting the Amended Application were entered on February 16, 2016 and provided for objection by any party in interest within 21 days. (ECF Nos. 15, 16.) The Applicants filed their Disclosure of Compensation of Attorney for Debtor pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b) on February 23. (ECF No.

3

22.) The disclosure stated that the source of the Applicants' compensation was the DIP. (Id.)

On February 25, 2016, the DIP's schedules and statement of financial affairs ("SOFA") were filed. (ECF No. 28.) The schedules listed two unsecured claims belonging to Music. (Id. at 21-22.) According to the SOFA, Music is an insider to whom repayments had been made on the unsecured claims within the past year. (Id. at 37.)

The UST objected to the Amended Application on March 3, 2016, and moved to vacate the order approving employment. (ECF No. 30.) The Applicants subsequently filed supplemental declarations revising their amended disclosure of the retainer payment. (ECF No. 34.) The declarations addressed the nature of the financial transactions between the DIP, Music, and the Applicants (additions to the Amended Application disclosure were emphasized in italics in the original):

> Prior to the filing of this case, [the Applicants] received a $1,000.00 payment on March 24, 2015, for time and charges relating to representation of the [DIP] in a lawsuit filed in Ware County by Lewis & Raulerson, Inc. . . . . This payment covered time for an initial consultation and the preparation of and filing of an Answer in the Lewis & Raulerson case. This payment was made by a check drawn on [RMI] as a draw to the [DIP]. **Nine months** prior to the filing of this case [the Applicants] received a $60,000.00 check on May 11, 2015, in the form of a retainer to cover fees and expenses **regarding the [DIP's] defense of** the pending Lewis & Raulerson Superior Court litigation and for fees

4

>related to a potential Chapter 11 bankruptcy filing. This payment was made by a check drawn on the account of [Music], [DIP's] son, **which, according to the [DIP], were the proceeds of** a loan to the [DIP] for the purpose of resolving his legal and financial issues. **As a result of this loan from [Music] to [the DIP], [Music] became a creditor of the [DIP]. Four months later, on September 17, 2015, [Music] made a loan to "Music Pecans" for $125,000. "Music Pecans" is a sole proprietorship owned and operated by the [DIP]. Music then became a creditor in this case based on this loan. Out of the initial $60,000 loan to the [DIP], [Music] has been repaid $351.36 by [DIP]. [Music] has been repaid $39,376.58 by Music Pecans, such payments having been made to or on behalf of [Music] in the months prior to the bankruptcy filing. Such payments may be potential preferential transfers. Any potential to recover the loan repayments is currently unknown. [The Applicants] ha[ve] never met, represented or agreed to accept payment for the retainer in this case from [Music]. The check for the retainer was delivered by the [DIP].**

(Id. at 1-2, 4-7)(emphasis in original).

Coinciding with the supplemental declarations, amended schedules and an amended SOFA were filed. (ECF No. 35.) The amended schedules included an unsecured claim belonging to RMI in the amount of $0.00 and identified the nature of the claim as "Loans to Shareholder." (Id. at 13-14.) According to the amended SOFA, RMI is an insider to whom a payment on a debt was made within the past year and is entirely owned by the DIP. (Id. at 19, 22.) Both the amounts paid to RMI and the amounts still owed to RMI are listed as "Unknown." (Id. at 19.) Additionally, the

5

amended SOFA states that the "[DIP] and/or his dba Music Pecans have made loans to [RMI]. Some of the amounts have been repaid. Outstanding amounts unknown pending reconciliation by CPA." (Id at 22.)

The Applicants' brief in support of the Amended Application makes no reference to RMI and states that the Applicants received a check in the amount of $60,000 "to cover fees and expenses regarding the [DIP]'s defense of the pending Lewis & Raulerson Superior Court litigation and for fees related to a potential Chapter 11 bankruptcy filing." (See ECF No. 44.)

At the hearing, the DIP testified that the check for the $60,000 retainer payment was given to him by Music for the DIP's attorney and that the check was a "loan or a gift" that he "fully intended" to pay back. (Hr'g, March 24, 2016.) There was no loan agreement signed, only a verbal arrangement. (Id.)

## CONCLUSIONS OF LAW

The UST asserts that the Applicants are unable to "render non-biased representation of the estate with respect to the investigation and litigation of potential claims against both RMI and [Music]" because RMI and Music were the sources of the Applicants' retainer payment. (UST's Brief, ECF No. 45 at 7.) The UST further contends that in addition to this disqualifying conflict of interest, the Applicants' "consistent failure to make

6

adequate disclosures in this case reinforces [the UST's assertions] and constitutes a separate basis for sanctions." (Id.)

In support of his argument that the Applicants have a disqualifying conflict of interest, the UST relies on my ruling in a case in which two creditors and one party in interest paid the post-petition attorney fees for the debtor. See In re Adam Furniture Industries, Inc., 158 B.R. 291 (Bankr. S.D. Ga. 1993). In that case, I determined that when a law firm receives its fees "from the very entities against whom avoidance actions may have to be taken, a real possibility exists for a conflict of interest for the law firm." Id. at 300. If the law firm is "called upon to sue the very people and entities that pay them," a conflict exists requiring the disqualification of the law firm "under section 327(c) and/or under sections 327(a) and 101(14)(E))." Id.

While the UST's argument is not without merit, Adam Furniture can be readily distinguished from this matter. In Adam Furniture, the attorneys for the debtor accepted payment of post-petition fees from creditors and a party in interest. Here, the Applicants have made it clear that they have only drawn pre-petition fees from a retainer payment that was received in May 2015, nine months before the DIP's petition was filed.

More importantly, the attorneys in Adam Furniture received payments directly from creditors and a party in interest. Here,

7

there is no dispute that the retainer payment received by the Applicants consisted of two checks drawn on the accounts of Music and RMI, both of whom are now creditors. But according to the DIP's testimony, the $60,000 check drawn on Music's account was the proceeds of a loan from Music to the DIP. Although there is no documentation regarding the terms of this transfer from Music to the DIP, it is common for financial transfers between family members to lack such documentation. Therefore, despite the check being drawn on the account of Music, it was the DIP who actually paid the Applicants, not Music.

While the nature of the DIP's transfers to and from RMI are not clear, the Applicants' characterization of the RMI check as a draw to the DIP again suggests an undocumented transfer between the DIP and RMI, an entity entirely owned by the DIP.

Accepting that the retainer payment constituted the proceeds of transfers the DIP received from Music and RMI, the source of the retainer payment was the DIP, not Music or RMI. Finding the initial disclosures minimally compliant, the UST's objection is overruled.

Notwithstanding, I commend the UST for the performance of his duty monitoring applications filed under 11 U.S.C. § 327. See 28 U.S.C. § 586(a)(3)(I). As a result of his inquiry, legitimate concern was raised regarding the investigation and litigation of potential preference actions against Music and RMI. Fortunately

8

section 327(a) allows for the DIP to "employ one **or more** attorneys" to assist him in carrying out his duties. See 11 U.S.C. § 327(a)(emphasis added). Recognizing the UST's concern and the lack of documentation of the transactions between Music, RMI, and the DIP, I condition the continued employment of the Applicants on the requirement that additional counsel is obtained to investigate and litigate, if necessary, any potential preference actions against Music and RMI.

### ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, the United States Trustee's Objection to Employment Application is **ORDERED OVERRULED;**

**FURTHER ORDERED** that the Debtor in Possession obtain additional counsel to investigate and litigate, if necessary, any potential preference actions against Ronnie E. Music. Jr. and Ronnie Music, Inc.

```
_____
JOHN S. DALIS
United States Bankruptcy Judge
```

Dated at Brunswick, Georgia,
This 2 day of May, 2016.

AO 72A
(Rev. 8/82)